**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ : | |
| SYLVAN PAPER CORPORATION, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 04-3179 (JAP) |
| : | |
| R. HORIZON WAREHOUSE and : | |
| VERLAN FIRE INSURANCE : | |
| COMPANY, : | |
| : | **OPINION** |
| Defendants. : | |
| _____: | |

APPEARANCES:

Jonathan E. Levitt, Esq.
Ronnie Spring, Esq.
Frier & Levitt, LLC
19 Microlab Road
Suite A
Livingston, New Jersey 07039
     Attorneys for Plaintiff
     Sylvan Paper Corporation

Gary Potters, Esq.
George E. Reede, Jr., Esq.
Potters & Della Pietra LLP
100 Passaic Avenue
Fairfield, New Jersey 07004
     Attorneys for Defendant
     Verlan Fire Insurance Company

PISANO, District Judge.

Plaintiff Sylvan Paper Corporation ("Sylvan") brought this action against Defendants R. Horizon Warehouse ("R. Horizon") and Verlan Fire Insurance Company ("Verlan") for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff sought both declaratory relief and damages.  On September 15, 2004, R. Horizon was dismissed from the case.  Currently before the Court is a motion for summary judgment filed by the remaining defendant, Verlan, and a cross-motion for summary judgment filed by Sylvan.  For the following reasons, the Court grants Verlan's motion for summary judgment and denies Sylvan's cross-motion for summary judgment.[1]

## I.    Factual History

R. Horizon, a public warehousing company, operated a warehouse in Newark, New Jersey where it stored approximately 35 million pounds of paper products for numerous customers.  Sylvan, which is in the business of buying and selling paper, stored paper at this warehouse.  R. Horizon purchased a Comprehensive Property Damage Insurance Policy with Verlan for the policy period December 1, 2002 through December 1, 2003.  This policy covered certain personal property located at R. Horizon's warehouse.  The National Bank of Canada, care of Sylvan, was listed as one of the loss payees under the policy.[2]

---

[1] Jurisdiction is not challenged and is premised on 28 U.S.C. § 1332(a) (2005).  Sylvan is New Jersey corporation with its principal place of business in Englewood Cliffs, New Jersey. Verlan is a Maryland company with its principal place of business in Silver Springs, Maryland.

[2] The relationship between Sylvan and National Bank of Canada is unclear from the parties' submissions.  Defendant points out, for the first time in its reply brief and the supplemental 56.1 statement annexed to its reply brief, that Sylvan was not technically the loss payee under the policy.  The parties have not briefed the issue of whether Sylvan is or is not a

In July, 2003, R. Horizon announced that it was closing its warehouse and notified its customers that they had approximately two weeks to remove their property from the warehouse. R. Horizon's president, Leonard Ballot, described the removal of the paper as "absolute chaos." About forty-five customers had to remove paper from the warehouse. To facilitate the removal, the millions of pounds of paper stored at the warehouse were loaded into dozens of trailers and moved from the warehouse to new storage locations including Sylvan's new warehouse company, LIK Warehouse. Most of the trailers delivering Sylvan's paper were driven by R. Horizon's employees, while others were driven by LIK warehouse.

On August 1, 2003, Sylvan's CEO, Ronald Blum, informed Mr. Ballot that an unspecified amount of inventory that it stored at R. Horizon warehouse was missing.[3] At that time, Blum told Ballot that when the data on the inventory shortage was complete, he would contact Ballot with a claim to provide to R. Horizon's insurance company. On August 20, 2003, Blum wrote a letter to Ballot stating that approximately $117,000 of Sylvan's inventory was

_____

"loss payee" under the policy and accordingly, such will not be the basis of this Court's decision. For purposes of adjudicating Verlan's motion for summary judgment, the Court will construe this issue in the light most favorable to the non-moving party, Sylvan, and accordingly, Sylvan will be referred to as a loss payee under the policy.

[3] The date that Sylvan noticed that 300,000 pounds of its paper stock was missing is in dispute. Sylvan claims that it discovered the loss of its paper during the period of time when its paper was being shipped from the R. Horizon warehouse to Sylvan's new warehouse. Verlan claims that Sylvan discovered the loss on or about August 20, 2003, approximately one-month after the warehouse closed. The exact date that Sylvan discovered the alleged paper loss is immaterial to the Court's decision.

missing.[4]  This consisted of approximately 300,000 pounds of Sylvan's paper stock.[5]  On August 22, 2003, R. Horizon submitted a claim to Verlan on behalf of Sylvan to recover for the loss of Sylvan's paper that it stored at the warehouse.  Verlan sent an adjuster, Edward Passamonti, to investigate the claim.  On October 14, 2003, Verlan denied R. Horizon's claim because the insurance policy excluded losses resulting from "any unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory."  Plaintiff initiated this lawsuit on July 6, 2004.

## II.   Legal Discussion

### A.   Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue

---

[4] In its submissions to the Court, Sylvan has inconsistently valued the missing paper at $117,000, $120,000, and $130,000.  The exact value of the paper is immaterial to the instant motions.

[5] Paper stock is another term for generic 8 ½ by 11 inch paper that one would purchase for personal use at an office supply store.  Sylvan also stored rolls of paper at the R. Horizon warehouse.  Rolls are large, tightly wound spools of paper that can later be slit and packaged. None of Sylvan's paper rolls were reported missing.   Although 300,000 pounds of paper stock is a significant amount of paper, it represents less than one percent of the total amount of paper, approximately 35 million pounds, stored at the R. Horizon warehouse prior to its closure.

of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial.  Id.

at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine

issue of material fact, not just "some metaphysical doubt as to the material facts."  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

     The Court must consider all facts and their logical inferences in the light most favorable

to the non-moving party.  Pollock v. American Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d

Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but

need determine only whether a genuine issue necessitates a trial.  Anderson, 477 U.S. at 249.  If

the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a

genuine issue of material fact exists, then the Court must grant summary judgment.  Big Apple

BMW v. BMW of North America, 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.**     **Verlan's Motion for Summary Judgment**

     **1.**     **Breach of Contract Claim**

     Plaintiff first asserts a breach of contract claim against Defendant.  In its breach of

contract claim, Plaintiff claims that Verlan breached the insurance policy, which names Sylvan as

a loss payee, because Defendant refused to pay Plaintiff for the missing paper.  The Court grants

Verlan's motion for summary judgment on Plaintiff's breach of contract claim because, under

these circumstances, the missing paper is not covered under the insurance policy.

     First, the burden is on the Plaintiff, Sylvan, to establish that its claim is covered under the

insurance policy.  See Bashir v. Am. Economy Ins. Co., 98 Fed. Appx. 928, 928 (3d Cir. 2004);

Cobra Products, Inc. v. Federal Ins. Co., 722 A.2d 545, 549 (N.J. Super. Ct. App. Div. 1998).

Sylvan has not set forth any evidence of when the paper went missing or where it went missing from. This is problematic for Sylvan because the insurance policy terminated on July 18, 2003 after R. Horizon closed its warehouse. Accordingly, if the paper went missing after July 18, 2003, it would not be covered under the policy. Further, the policy only covers property "which is on the insured location [R. Horizon's warehouse] or within 500 feet thereof." Thus, if Sylvan's paper went missing during the transport of paper from R. Horizon's warehouse to the LIK warehouse, or sometime after transport, it is not covered under the insurance policy.

Despite the parties extensive briefing and discovery in this matter, it is still unclear as to when and where the paper went missing. When asked at his deposition whether he could provide a date on which the paper was stolen, Sylvan's CEO Ronald Blum said, " I have no idea." In its opposition brief, Plaintiff insinuates that the paper was stolen from the warehouse during the removal process prior to the termination of the insurance policy on July 18, 2003. To support this position, Plaintiff claims that its inventory records and those of R. Horizon indicate that the paper was present at the warehouse prior to the mass removal and never officially removed from the warehouse to Sylvan's new warehouse, LIK; however, such allegations fall short of proof that Sylvan's claim is covered under the insurance policy.

Even if Sylvan has sufficiently established that its missing paper is covered under the insurance policy, Verlan can defeat Plaintiff's claim if it establishes that the claims fall under one of the exclusions listed in the policy. See, e.g., Cobra Products, 722 A.2d at 549 (citing Hartford Accident & Indem. Co. v. AETNA Life & Cas. Ins. Co., 483 A.2d 402, 409 (1984)). The policy excludes property coverage under certain circumstances. First, the policy does not insure against "any unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking

inventory." Further, the policy does not insure against "[misappropriation, secretion, conversion, infidelity, or dishonesty by you or any of your employees." These exclusions will be referred to, respectfully, as the "mysterious disappearance exclusion" and the "employee theft exclusion."

Verlan has established that the mysterious disappearance exclusion precludes coverage for Sylvan's missing paper. The Court initially notes that it is an anomaly for the law to require a party to prove that something is mysterious or unexplained. Webster's Dictionary defines "mysterious" as "difficult or impossible to understand" and "unexplained" as "not explained or accounted for." Verlan has shown that there are a variety of explanations as to how the paper went missing: (1) there was a clerical mistake in recording or inventory and accordingly, no Sylvan paper is actually missing;[6] (2) an R. Horizon employee stole the paper; (3) a Sylvan employee stole the paper; (4) an unrelated third-party stole the paper; or (5) the paper was mistakenly sent to or taken by the wrong customer during the chaos in the aftermath of the R. Horizon warehouse closing. Accordingly, Verlan has established that it is difficult to understand how the paper went missing and that the loss of paper is "not explained" or "unaccounted for." In fact, because of the various plausible scenarios to describe the missing paper, this is precisely the type of situation that the mysterious disappearance exclusion was designed for. The clause prevents Verlan from having to pay for claims based on speculation and conjecture.

Plaintiff attempts to defend against the application of the mysterious disappearance clause by advancing two arguments. First, Plaintiff claims that the mysterious disappearance clause is ambiguous. The Court rejects this argument. Plaintiff's argument is based on McCormick &

---

[6] For example, in her deposition, Rena Ballot, R. Horizon's bookkeeper, speculated that the men loading the trucks during the removal of the property from the warehouse did not property record the items that they were loading.

Co., Inc. v. Empire Ins. Group, 878 F.2d 27 (2d Cir. 1989).  In McCormick, the Second Circuit

held that a mysterious disappearance exclusion identical to the one at issue in this case was

ambiguous because the clause "disclosed on taking inventory" could be read to modify

"unexplained loss" and "mysterious disappearance" in addition to modifying "loss or shortage."

Id. at 30.  However, the New York Court of Appeals rejected the McCormick court's application

of New York law, finding that an identical mysterious disappearance clause was unambiguous.

See Maurice Goldman & Sons v. Hanover Ins. Co., 607 N.E.2d 792, 792 (N.Y. 1992).  The New

York Court of Appeals held that the construction of the sentence makes clear that the phrase

"disclosed on taking inventory" only modifies "loss or shortage' not "unexplained loss" or

"mysterious disappearance."  See id.

    The Court agrees with New York's highest court that the mysterious disappearance clause

is unambiguous.  Principles of grammar do not justify an opposite conclusion.  Also, it would be

illogical to read the clause otherwise.  To read the clause as prohibiting "unexplained losses

disclosed on taking inventory" and "mysterious disappearances disclosed on taking inventory"

would be redundant as such circumstances presumably would be subsumed in the category of

"losses or shortages disclosed on taking inventory."  Instead, the clause excludes coverage in

three distinct circumstances: unexplained loss; mysterious disappearance; or loss or shortage

disclosed on taking inventory.[7]

    Furthermore, Sylvan attempts to avoid the application of the mysterious disappearance

exclusion by arguing that the paper was stolen and thus, its disappearance was not mysterious.  In

---

    [7] The parties disagree as to whether Sylvan discovered the missing paper on the taking of
inventory and accordingly, the Court will not and need not focus on or apply the policy's
exclusion for "loss or shortage disclosed on taking inventory."

support of its position, Sylvan relies on the following arguments:  (1) Sylvan and R. Horizon's records regarding the missing paper closely match; (2) Sylvan's missing paper was more "saleable" than most of the paper stored at R. Horizon because it was paper stock, as opposed to paper rolls; (3) there was absolute chaos during the closing of R. Horizon's warehouse and the customers' subsequent removal of their paper; (4) ten years before the warehouse closed an R. Horizon employee took kickbacks to put extra pallets of paper on a customer's truck; and (5) approximately two years before the warehouse closed, a tractor trailer containing paper stock was stolen from R. Horizon's yard.

This is hardly evidence of theft.  If in fact Sylvan's and R. Horizon's inventory records closely match, this merely proves that Sylvan's paper is missing, not that it was stolen.  Further, Plaintiff can only point to two instances of theft in the twenty-three years that R. Horizon operated the warehouse, both of which occurred in factually distinct circumstances and years before Sylvan's paper allegedly went missing.  Notably, Leonard Ballot of R. Horizon stated at his deposition that there had not been a theft from within the warehouse in twenty-three years.

Additionally, even if the paper was stolen, we still do not know who stole it.  It is important to determine who stole the paper because the employee theft exclusion in the insurance policy excludes from coverage theft by an R. Horizon or Sylvan employee.[8]  Accordingly, Sylvan can only recover under the policy if a third party stole its paper.  However, there is no evidence

--------

[8] The parties do not dispute that the employee theft exclusion in the insurance policy applies where the theft was perpetrated by a Sylvan employee.  In section II of its cross-motion, Sylvan indicated that it intended to insure against theft of its property by someone other than an employee of Sylvan.

of a third-party theft.[9]  In fact, as Verlan has shown, if 300,000 pounds of Sylvan's paper was stolen, it would have been difficult for a third party to have stolen that magnitude of paper without anyone noticing.  Sylvan's CEO Ronald Blum stated at his deposition that it would take at least seven trucks to transport 300,000 pounds of paper stock.  Further, there was no evidence of a break-in or other security breach by a third–party.

Despite its assertions of theft, Mr. Blum stated in his deposition that he had no idea what happened to Sylvan's 300,000 pounds of missing paper.

> Q.    Now let me just start with the first lot, which is 9401B2.
>        Can you tell me the date that lot was stolen?
> A.    I have no idea.
> Q.    Can you tell me who stole it?
> A.    No.
> Q.    Can you tell me how it was stolen?
> A.    No.
> Q.    Can you tell me where from within R. Horizon's warehouse
>        it was stolen from?
> A.    No.

---

[9]  This case is factually distinguishable from the cases Plaintiff relies on because in those cases, the record reflects evidence that a theft did in fact occur.  In Farmland Ind., Inc. v. Union Fire Ins. Co., the court found that the Plaintiff was not required to prove who was responsible for the theft of its property to overcome the mysterious disappearance exclusion.  333 F. Supp. 2d 1133, 1142 (D. Kan. 2004).  However, unlike in this case, the Plaintiff presented evidence that its property was in fact stolen.  Id.  In Sphere Drake Ins. PLC v. Trisko, the court concluded that evidence was sufficient to sustain a jury verdict in favor of the insured against its insurance company where there was evidence that the property in question, jewelry, was stolen due to the presence of jewel thieves and history of crime in the area; expert testimony that a theft occurred; and the presence of a number of the jewelry items in a Miami jewelry store several months later. 226 F.3d 951, 955-56 (8th Cir. 2000).  In Gurfein Bros., Inc. v. Hanover Ins. Co., a diamond dealer sued its insurance company to recover for a loss of diamonds that disappeared from the trunk of an employee's the car while the employee was repairing a slashed tire on the side of the road.  248 A.D.2d 227, 227 (N.Y. App. Div. 1998).  The court found that summary judgment for the insurance company was improper where the record reflected that prior jewel thefts recently occurred under similar circumstances in the area where the jewels went missing.  Id. at 228-229.

> Q.      Can you tell me the answers to those questions for any of
>         the lots on this list, Exhibit No. 6?
> A.      No.

In addition, other courts have found the mysterious disappearance exclusion applicable under similar circumstances.  In <u>Star Diamond, Inc. v. Underwriters at Lloyd's, London</u>, the court granted summary judgment in favor of an insurance company on an insured's breach of contract claim for coverage for loss of diamonds that disappeared from a knapsack in the back of an automobile.  965 F. Supp. 763, 768-69 (E.D. Va. 1997). In adjudicating the motion, the court found that the mysterious disappearance exclusion in the insurance policy precluded coverage for the missing jewels because the circumstances surrounding the disappearance of the jewels "is a mystery that [Plaintiff] cannot explain."  <u>Id</u>.  Further, the court rejected Plaintiff's contention that theft was the "most probable cause of the disappearance," stating that this was "nothing more than unsupported speculation."  <u>Id</u>.  In <u>Maurice Goldman</u>, the court granted summary judgment in favor of the defendant insurance company under the policy's mysterious disappearance exclusion clause where the plaintiff was unable to explain how or from where a bag containing jewelry went missing from his personal effects.  <u>Maurice Goldman</u>, 607 N.E.2d at 792.

Therefore, the mysterious disappearance exclusion bars coverage of Sylvan's missing paper.  Verlan specifically contracted for the exclusion to avoid having to insure for the loss of property when the circumstances surrounding the loss were purely speculative.  To hold otherwise would completely render the exclusion worthless.  Accordingly, Verlan's motion for summary judgment on Plaintiff's breach of contract claim is granted.

**2.      Bad Faith Claim**

Plaintiff alleges that Verlan acted in "bad faith" by refusing to indemnify Sylvan for its

loss of paper pursuant to the insurance policy between Verlan and R. Horizon.  New Jersey recognizes a cause of action for an insurer's bad faith failure to pay an insured's claim.  See, e.g., Pickett v. Lloyd's, 621 A.2d 445, 452 (N.J. 1993); see also Tariso v. Provident Ins. Co., 108 F. Supp. 2d 397, 400-01 (D.N.J. 2000) (applying the Pickett standard). An insurance company does not act in bad faith if the plaintiff's insurance claim was "fairly debatable."  See, e.g.,  Pickett, 621 A.2d at 453.  In defining the "fairly debatable" standard when an insurance company has denied benefits, the New Jersey Supreme Court held that "a claimant who could not have established as a matter of law a right to summary judgment on the substance of the claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay a claim." See, e.g., id. at 453-54.  As discussed in this opinion, Plaintiff cannot establish the right to summary judgment on his breach of contract claim.  Therefore, the claim was "fairly debatable."  See, e.g., Ketzner, M.D. v. John Hancock Mutual Life Ins. Co., 118 Fed. Appx. 594, 599-600 (3d Cir. 2004) (affirming grant of summary judgment dismissing plaintiff's bad faith claim against insurance company because plaintiff could not establish a right to summary judgment with respect to her underlying claim for disability benefits); Tariso, 108 F. Supp. 2d at 401-02 (granting summary judgment in favor of insurance company on bad faith claim because plaintiff could not establish a right to summary judgment on his underlying claim for benefits).  Accordingly, the Court grants summary judgment in favor of Verlan on Plaintiff's bad faith claim.

**3.    Unjust Enrichment Claim**

Plaintiff further alleges that if Defendant is not required to pay Plaintiff for its loss, it would be unjustly enriched "by the value of Plaintiff's payments for the storage of the lost goods."  Under New Jersey law, "recovery under unjust enrichment theory may not be had when

12

a valid, unrescinded contract governs the rights of the parties." <u>Van Orman v. American Ins. Co.</u>, 680 F.2d 301, 310 (3d Cir. 1982); <u>Duffy v. Charles Schwab & Co., Inc.</u>, 123 F. Supp. 2d 802, 814 (D.N.J. 2000).  There is no evidence to suggest that the insurance policy between Verlan and R. Horizon is invalid, has been rescinded, or otherwise does not govern the rights of the parties to this lawsuit.  Accordingly, since the insurance policy governs the rights of the parties to this case, Plaintiff's unjust enrichment claim is dismissed.

**C.**     **Sylvan's Cross-Motion for Summary Judgment**

Plaintiff filed a cross-motion for summary judgment with respect to its breach of contract and bad faith claims against Defendant.  Plaintiff argues that summary judgment in favor of Plaintiff is warranted on its breach of contract claim because (1) the mysterious disappearance clause is ambiguous; and (2) even if the clause is unambiguous, Sylvan's loss of paper is not excluded under that provision.  In support of its bad faith claim, Plaintiff argues that Verlan acted in bad faith because its investigation of the insurance claim was self-serving and incomplete.  For the reasons stated above, Plaintiff's cross-motion for summary judgment is denied.

**III.**     **Conclusion**

In conclusion, for the reasons stated above, the Court grants Verlan's motion for summary judgment and accordingly, dismisses Plaintiff's claims for breach of contract, bad faith, and unjust enrichment.  The Court denies Plaintiff's cross-motion for summary judgment.  An appropriate order accompanies this opinion.

DATED: 22nd of November, 2005                    s/ Joel A. Pisano
                                                    JOEL A. PISANO, U.S.D.J.

13